**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RYAN PETROVIA,                              *

Plaintiff,                                  *

v.                                          *         Civil Action No. PWG-21-989

WARDEN GAIL WATTS, *et al.*,                *

Defendants.                                 *
                                          ***

## MEMORANDUM OPINION

Plaintiff Ryan Petrovia, who is representing himself in this suit, brings this civil action pursuant to 42 U.S.C. § 1983 against Baltimore County Detention Center ("BCDC") Director Gail Watts, Deputy Director Renard Brooks, Major Robert Alford, Lt. Nathan Zahn, Sgt. Ryan McDowell, Sgt. Loretta Carr, Sgt. April Palmer, and Officer Teyon Newsome-Williams. ECF No. 1; ECF No. 6-2. Petrovia alleges that Defendants were deliberately indifferent to the conditions of his confinement at BCDC, harassed and assaulted him, and tampered with his mail. *Id.* He seeks monetary damages and his release from prison. ECF No. 1 at 8,

On September 27, 2021, Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. ECF No. 25. Petrovia opposed the motion (ECF No. 33), and on June 16, 2022, he filed correspondence construed as a Motion to Amend the Complaint (ECF No. 38).

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Defendants' Motion, construed as a Motion for Summary Judgment, will be granted, and Petrovia's Motion shall be denied.

### Background

In his Complaint, Petrovia states that he has been housed at BCDC since his arrest in December 2019. Compl., ECF No. 1 at 4. He alleges that on February 22, 2021, Sgt. Palmer and

Officer Williams assaulted him by spraying him with pepper spray and tackling him to the floor after he requested an inmate complaint form.  *Id.*  Petrovia also alleges that Sgt. McDowell has "constantly stalked and harassed" him and has withheld or discarded his mail.  *Id.* at 5.  Petrovia claims that he fears for his safety at BCDC and worries that correctional staff will retaliate against him for "speaking out against injustice and mistreatment."  *Id.* at 6-7.

Pursuant to this Court's Order, Petrovia supplemented his Complaint to specify how each named Defendant participated in the alleged wrongdoing.  ECF No. 5.  He states that he wrote letters to Defendants Watts, Brooks, Alford, and Zahn as an advocate for inmates' rights.  Supp., ECF No. 6-2 at 1.  Specifically, he complained about the conditions at BCDC, including overcrowding; lack of masks, sanitation and social distancing in response to the COVID-19 pandemic; moldy showers; broken toilets; distribution of spoiled food; and excessive lockdowns. *Id.*  It is unclear from Petrovia's pleading whether he received any response regarding these matters.  *See id.*

Petrovia alleges that after he sent the letters, he "began to notice adverse treatment by staff."  *Id.*  In particular, he claims that in June 2020, Sgt. McDowell "targeted" him and falsely accused him of being an active member of a prison gang known as Dead Man Inc., or DMI.  *Id.* Sgt. McDowell then "continued to stalk and harass" him, recorded his phone calls, and held his mail, sometimes opening incoming and outgoing letters.  *Id.* at 1-2.  When Petrovia asked Sgt. Carr about his mail, he was told that "no mail was ever received."  *Id.* at 2.  Petrovia also claims that after he sent an emergency petition for writ of habeas corpus to Baltimore County Chief Administrative Judge Ruth Jakubowski on March 19, 2021, it was reviewed and denied by Judge Robert Cahill by order dated March 25, 2021.  *Id.* at 3.  Petrovia contends Sgt. McDowell purposely delivered the petition to Judge Cahill, whom he claims was biased against him.  *Id.*

With regard to Sgt. Palmer and Officer Williams, Petrovia claims that on February 22, 2021, he asked to be moved to a different cell. *Id.* at 3-4. Sgt. Palmer refused his request and began yelling at him. *Id.* at 4. Petrovia believes that as a result of previously having suffered a brain injury and post-traumatic stress disorder, he "spaced out." *Id.* He asked to speak to a Lieutenant and despite not resisting, was pepper sprayed and taken to the ground. *Id.* Petrovia alleges that he suffered a back injury as a result. *Id.*

Defendants do not dispute that Petrovia sought to be transferred to a new cell at around 2:32 p.m. on February 22, 2021, after correctional officers overheard Petrovia's cellmates threatening him. *See* Incident Report, ECF No. 25-17. According to Defendants, however, when Sgt. Palmer arrived to facilitate the move, Petrovia "refused after [being] given several orders." *Id.* at 1. Petrovia stated, "I don't disrespect nobody and I don't want to move." *Id.* Officer Williams sprayed Petrovia with mace, allowing correctional staff to secure him with handcuffs. *Id.* He was then escorted out of the housing unit without further incident and treated for mace exposure. *Id.*; *see also* Patient Chart, ECF No. 25-15. Petrovia was given a cold washcloth for his eyes, baclofen and ibuprofen for pain, milk and ice for his face, and Benadryl for any possible allergic reaction. ECF No. 25-15 at 1. Approximately five hours after the incident, Petrovia was observed to be "much less distressed." *Id.*

As to Petrovia's claims against Sgt. McDowell and Sgt. Carr, Defendants assert that on December 18, 2020, a Baltimore County Grand Jury Subpoena directed correctional staff to "provid[e] any and all incoming and outgoing mail to/from Inmate Ryan Petrovia . . . for the duration of his incarceration." Subpoena, ECF No. 25-16. The Subpoena also instructed correctional staff to provide Petrovia's mail to the Baltimore County Police Department. *Id.*

**Petrovia's Motion to Amend**

Petrovia filed his initial Complaint on April 22, 2021, and Defendants filed their Motion to Dismiss, or in the Alternative, for Summary Judgment on September 27, 2021.  ECF Nos. 1, 25. On June 16, 2022, the Court received correspondence from Petrovia seeking leave to file an amended complaint.  ECF No. 38.

Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).

Petrovia filed his proposed amendment nearly nine months after the filing of Defendants' dispositive motion.  Moreover, Petrovia's proposed amendment names new parties and adds new causes of action, thereby altering the nature and scope of the litigation.  Accordingly, his Motion to Amend shall be denied.[1]  If Petrovia wishes to pursue the additional claims, he may file a new suit.

---

[1] The Court also received correspondence from Petrovia titled "Amendment of Charges," on September 23, 2021.  ECF No. 23.  In the filing, Petrovia lists the names of each Defendant and summarily claims that they violated his constitutional rights and committed several torts against him.  *See id.*  If Petrovia's intent was to move to amend his Complaint, his request would be subject to denial because he failed to provide enough detail to illuminate the nature of the claim to allow Defendants to respond.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Moreover, Petrovia's proposed amendments must be denied because they embrace "sovereign citizen" or "flesh and blood" ideologies, which have been universally rejected by the courts.  *See, e.g., Bey v. Genano*, No. PWG-16-cv-2800, 2017 WL 1315530, at *2 n.7 (D. Md. 2017) (citing *Fullard v. Maryland*, 2015 WL 1517393, at *1 n.1 (D. Md. Mar. 31, 2015)); *Bond v. N.C. Dep't. of Corr.*, No. 3:14-cv-379-FDW, 2014 WL 5509057 at *1 (W.D.N.C. Oct. 31, 2014).

## Standard of Review

Complaints raised by pro se litigants are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must raise factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment motions are granted when the moving party shows that there is no genuine issue of material fact, therefore entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The district court must view facts in the light most favorable to the nonmoving party, including drawing all "justifiable inferences" in favor of that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Material" facts "might affect the outcome of the suit under the governing law," and they constitute genuine issues if there is sufficient evidence for the trier of fact to rule in favor of the nonmoving party. *Id*. at 248.

## Analysis

### I.        Conditions Claim

At the time of the incident giving rise to this case, Petrovia was a pretrial detainee in Baltimore County, Maryland. Accordingly, his claims are analyzed under the Fourteenth Amendment. *See Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992). "The constitutional protections afforded a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment." *Barnes v. Wilson*, 110 F. Supp. 3d 624, 629 (D. Md. 2015) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).

The Eighth Amendment proscribes "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. U.S. Const, amend. VIII; *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see Estelle v. Gamble*, 429 U.S. 97, 102 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To the extent Petrovia complains about overcrowding, inadequate sanitation, spoiled food, and improper handling of the COVID-19 pandemic at BCDC, he raises conditions claims.

"[T]to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements—that the deprivation of [a] basic human need was *objectively* sufficiently serious, and that *subjectively* the officials acted with a sufficiently culpable state of mind." *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (internal alterations omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and

unusual.'" *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008).  "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement."  *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003).  "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."  *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993).

Here, as Defendants correctly note, Petrovia has not alleged, much less shown, that he suffered any injury as a result of the conditions alleged and has failed to produce evidence that the challenged conditions caused a serious injury.  *See* ECF Nos. 1, 6-2; *see also* ECF No. 25-1 at 14. Petrovia claims only that he has advocated for himself and other inmates by bringing these issues to the attention of Defendants Watts, Brooks, Alford, Zahn.  *See* ECF No. 6-2 at 1.  He does not assert that he suffered physically and mentally as a result of the challenged conditions, nor has he provided exhibits to support such assertions.  Thus, Defendants are entitled to summary judgment on Petrovia's conditions claims.

## II.  Excessive Force

Next, Petrovia claims that Sgt. Palmer and Officer Williams used excessive force against him, in violation of his constitutional rights.  In evaluating this claim, the Court must inquire whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  The Due Process Clause of the Fourteenth Amendment requires a pretrial detainee to "show only that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472-73 (2015).  A claim does not require the subjective intent necessary for an Eighth Amendment claim.  *Id*. at 2475.  To satisfy the objective level of harm,

Petrovia must show that the officers acted objectively unreasonably under the facts and circumstances of the case, which may be influenced by "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id*. at 2473; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Here, the record reflects that Officer Williams sprayed Petrovia with mace after Petrovia refused to comply with Sgt. Palmer's repeated instructions to move to another cell. Petrovia does not dispute that he failed to follow instructions; rather, he alleges that he "spaced out." The Fourth Circuit has previously "determined that the use of mace on an unruly prison inmate was not per se unconstitutional." *Justice v. Dennis*, 834 F.2d 380, 383 (4th Cir. 1987) (citing *Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir. 1984)), *cert. granted, judgment vacated on other grounds*, 490 U.S. 1087 (1989). Where Defendants' use of mace was not prolonged and was carried out only to gain control of Petrovia after he failed to comply with repeated instructions, Petrovia has not shown that Officer Williams and Sgt. Palmer acted objectively unreasonably. *Cf. Justice*, 834 F.2d at 383 (concluding that jury could find that use of mace was reasonable where inmate was already handcuffed). Moreover, the incident report confirms that Petrovia was evaluated by medical staff after the incident, and that his symptoms subsided within a few hours. Incident Report, ECF No. 25-17; Patient Chart, ECF No. 25-15. Although Petrovia now claims he suffered a back injury, he did not report it at the time, only complaining of pain in his left elbow, which was treated with pain medication. *Id.* As such, I conclude that any force used by the officers was applied in a good faith effort to maintain or restore discipline. Thus, Defendants are entitled to summary judgment on Petrovia's excessive force claim.

### III.    Mail Tampering

Petrovia claims that Sgt. Carr and Sgt. McDowell improperly handled and opened his mail on several occasions.   To the extent he alleges a violation of his rights under the Fourth Amendment, his claim fails.  In *Stroud v. United States*, 251 U.S. 15, 21-22 (1919), the Supreme Court established that prison officials may open prisoner mail without violating the Fourth Amendment by following established regulations and ensuring that "such seizures are prompted by reasonable justification."  *United States v. Massimino*, 641 F. App'x 153, 167 (3d Cir. 2016) (quoting *United States v. Brown*, 878 F.2d 222, 225 (8th Cir. 1989)).  In *Massimino*, the Third Circuit affirmed the district court's finding that a "grand jury subpoena and other information provided prison officials with a reasonable basis" to open and read the inmate's incoming and outgoing mail.  *Id.*  Likewise, here, the opening and holding of mail by Sgt. Carr and Sgt. McDowell were reasonably based on the grand jury subpoena issued by the state court in Petrovia's criminal case.

To the extent Petrovia asserts a violation of his right of access to the courts, he fares no better.  Prisoners have a constitutionally protected right of access to the courts.  *See Bounds v. Smith*, 430 U.S. 817, 821 (1977).  However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated

challenges to sentences or conditions of confinement before the courts.'"  *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355).  Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts.  *Id.* at 399.  Conclusory allegations are not sufficient in this regard.  *See Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (denying access to court claim based on allegation that petition for a writ of certiorari had, for unspecified reasons, been dismissed and where plaintiff did not even mention the point on appeal).

Here, Petrovia alleges that his emergency petition for a writ of habeas corpus was denied because Sgt. McDowell interfered with, and misdirected, his mail.  Absent from Petrovia's pleadings filed in this case, however, is any indication how Sgt. McDowell's alleged actions adversely impacted a viable claim.  He provides no evidence to support his summary assertion that his petition would have been granted had it not been reviewed by Judge Cahill.  In any event, Petrovia acknowledges that he sent the emergency petition for mailing on March 19, 2021, and the state court issued its ruling within a week.  As there is no discernible injury suffered by Petrovia and it does not appear that his right to access the courts has been infringed, summary judgment shall be granted in favor of Defendants on this claim.

### IV.    Harassment & Retaliation

Lastly, Petrovia asserts that Defendants' adverse actions against him, including McDowell's continued harassment, were carried out in retaliation for his efforts in advocating for inmates' rights.

To the extent Petrovia alleges that McDowell has verbally threatened him, he fails to state a valid claim.  Verbal abuse of inmates by guards, without more, does not establish an Eighth

Amendment violation.  *Henslee v. Lewis*, 153 F. App'x 178, 180 (4th Cir. 2005); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979).

If Petrovia claims that Defendants retaliated against him, he must establish three elements: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, *i.e.*, his protected conduct motivated at least in part the adverse action.  *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005); *Thaddeus-X. v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  If there is no impairment of a plaintiff's rights, however, there is no need for the protection provided by a cause of action for retaliation.  Thus, a showing of adversity is essential to any retaliation claim.  *Id.* at 599 (citing *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)).

As previously explained, Sgt. McDowell and Sgt. Carr reasonably intercepted all of Petrovia's mail pursuant to a grand jury subpoena.  Meanwhile, Sgt. Palmer and Officer Williams used force against Petrovia only in an attempt to remove him from a cell where he was being threatened by other inmates.  In sum, it does not appear that adverse action was taken against Petrovia because he advocated for inmates' rights.  Thus, Defendants are entitled to summary judgment.

**Conclusion**

Defendants' Motion, construed as a Motion for Summary Judgment, is granted.[2]  Petrovia's

Motion to Amend the Complaint is denied.  A separate Order follows.


September 6, 2022                                   _____/S/_____
Date                                                       Paul W. Grimm
                                                           United States District Judge

---

[2] The Court construes Petrovia's request for an Order directing his release from BCDC as a request for mandamus relief.  Under 28 U.S.C. § 1361, the federal district courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or one of its agencies to perform a duty owed to a petitioner.  However, this Court has no mandamus jurisdiction over county or state employees, including the Defendants in this case.  *See generally Gurley v. Superior Court of Mecklenburg Cnty.*, 411 F.2d 586, 587 (4th Cir. 1969).  Thus, Petrovia's request must be denied.